(37 App. Div. 590.)

### BLUM v. LANGFELD.

(Supreme Court, Appellate Division, First Department. February 24, 1899.)

1. APPEAL—REVIEW OF RULINGS EXCLUDING EVIDENCE.
   When a question put to a witness is objected to for apparent immateriality, the questioner must, by offer of proof, show the materiality of the evidence sought to be elicited, else a ruling sustaining the objection will be sustained on appeal.

2. CONVERSION—PLEADING AND PROOF—JUSTIFICATION.
   Where defendant, in an action for conversion, denies only the conversion, and does not admit a taking and plead justification, he cannot show that he took the goods as agent of one having a right to them superior to plaintiff's.
   Barrett, J., dissenting.

Appeal from trial term, New York county.

Action by Amanda Blum, as administratrix, against Jonas Langfeld. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

S. M. Stroock, for appellant.
Herbert H. Walker, for respondent.

RUMSEY, J.　The action was brought for the conversion of certain personal property which had belonged to Gustave Blum, the plaintiff's intestate, and which it was alleged had been delivered to the defendant by one Gorman, without any authority, and which, upon demand, the defendant had refused to deliver to the plaintiff.　An appeal is taken from a judgment recovered by the plaintiff and from an order denying a new trial.

It appeared in the case that, in the year 1891, Gustave Blum was a dealer in jewelry, having a place of business at No. 530 Broadway, in the city of New York.　On the 21st of June, 1891, he disappeared from his place of business and home, and nothing was heard from him until he committed suicide at the Grand Union Hotel, in New York City, on the 14th of July following.　The testimony of the plaintiff shows that on the 25th of June the defendant went to Gorman, who was the manager and bookkeeper of Blum's business, and requested of Gorman to deliver to him certain goods as security for a note of L. Langfeld.　Gorman delivered the goods, which were received by the defendant, and taken by him to his own place of business, which was in the same building, and on the other side of the store, which had been occupied by Blum.　After Blum's death, the plaintiff, who had been appointed his administratrix, demanded the goods, which the defendant refused to deliver, and the plaintiff thereupon brought this action.　The issue between the parties was whether the goods had been delivered to Jonas Langfeld, and their value, and no other question was in dispute between them.　The defendant set up no justification for the receipt of the goods, and no authority to hold them, nor did he deny that Blum was the owner of the goods, or entitled to the possession of them, at the time mentioned in the complaint, but those facts were expressly alleged in his answer.　He denied only the conversion and the value of the goods.　No other question was at issue, therefore, between the parties, than whether the goods had been delivered by Gorman to the defendant, and the value of them, if they had been so delivered by him and converted.

He did not claim that he was entitled to take them in the right of anybody else, or that he was entitled to the possession of them under any circumstances, and therefore no such question was in issue. Bearing in mind the issue that was between the parties, the question is whether, in the first place, there was sufficient evidence to warrant the jury in finding the verdict which they did, and whether any error was committed by the judge, either in his rulings upon the evidence or in his charge.　There is no doubt that, upon the issue which was presented, there was sufficient evidence to warrant the jury in finding that the goods were delivered to Jonas Langfeld, and received by him, and that, upon a demand, he refused to deliver them.

back to the plaintiff. Therefore, so far as those facts were concerned, the verdict was warranted by the evidence.

It appeared that, at the time the goods were transferred to Jonas Langfeld, a bill was made out in which the value of the goods was stated to have been $1,380.47. The defendant relied upon the statements in that bill as proof of the value of the goods. The plaintiff produced a witness who was familiar with the value of such articles, and who was present and assisted in the selection of the goods, and who stated that the charge in the bill which was presented was only one-fourth of the real value of the goods, and that it was so stated to Langfeld at the time the goods were delivered to him. The witness further stated that their real value was four times as much as was mentioned in that paper, and that in fact, instead of being about $1,380, it was more than $5,500. The defendant produced a witness, who testified that he was familiar with the value of those goods, and that it was substantially what was stated in the paper. This was practically all the evidence presented to the jury on that subject. It is clear that the matter was one purely for their consideration, and there is no reason to believe, upon the testimony, that they were mistaken in the conclusion which they reached.

There remains to consider the exceptions taken upon the trial. In considering these exceptions, it must not be forgotten that the questions presented were by the answer limited purely to the question whether the defendant received the goods, and refused to deliver them, and their value. The ownership is not denied, but that ownership, and the consequent ownership of his administratrix, is not disputed, but, on the contrary, the defendant expressly sets it up in his answer; alleging that, at the time mentioned in the complaint, Blum was the owner of the goods, and entitled to their possession. He did not attempt to justify his receipt of the goods, nor did he set up in the answer that he received them in the right of any other person, or that they were not the goods of the plaintiff. The question to be determined by the jury, then, being simply whether the defendant had received the goods and refused to deliver them, the defendant produced one Louis Langfeld, by whom it was proposed to show that, before Gustave Blum left his store, he agreed to deliver to the witness certain goods as security for a note which the witness had indorsed for his accommodation, and told Gorman to select the goods, and send them to the witness. The witness stated that this conversation with Blum took place in the month of June. The defendant was then put upon the stand, and was asked, whether he was present at any conversation between Mr. Louis Langfeld and Gustave Blum at that store in the month of June, 1891; to which question objection was taken, on the ground that it was immaterial and incompetent, and inadmissible, under section 829 of the Code. The objection was sustained, and the defendant excepted. The last ground of objection was clearly not well taken. But we think that, upon the facts shown, it does not appear that the court erred in sustaining the objection on the ground of the immateriality of the evidence. There is nothing to show what the defendant desired to prove, except as it may possibly be inferred from the form of the

question. But it is the duty of the party who insists that an error has been committed to show that such is the fact. It is not sufficient to show that the ruling may have possibly been erroneous. The presumption is that the ruling was correct, and the court will not make any presumption that error was committed. If any presumption is to be made at all, it is that the facts warranted the ruling, and, unless it affirmatively appears that the question asked was material, the action of the court must be sustained. Carman v. Pultz, 21 N. Y. 547; Tracey v. Altmyer, 46 N. Y. 598. There is nothing to show in the case, as it is presented, that the evidence which would have been produced in answer to that question would have been material to the case.

The defendant did not justify the taking of these goods under any authority from Louis Langfeld, or by his right, but he admitted by his answer that Blum was the owner and entitled to the possession of them at the time mentioned in the complaint, and, even had he proved that he thus took them, the evidence would have been immaterial, under the pleadings. Therefore, when the objection was taken that such evidence was not material, the court was required to sustain that objection.

The exceptions to the charge stand upon the same grounds. The court was told that Gorman had no authority to deliver the goods in question, and as to that there can be no doubt. The fact that he may have had authority to deliver them to Louis Langfeld is no justification to the defendant in this case, because the defendant nowhere claims to have taken them by such authority, nor does he in any way connect himself with the delivery to Louis Langfeld of these goods.

The other exceptions to the charge are clearly not well taken.

Upon the whole case, the judgment and order were correct, and must be affirmed, with costs. All concur, except BARRETT, J., dissenting.

BARRETT, J. (dissenting). I cannot agree to the affirmance of this judgment. The verdict was clearly against the weight of evidence. The only evidence that the defendant ever had the goods in his possession is in the testimony of Hahn, one of the clerks of Blum, the intestate. He testifies that the defendant "said he wanted to receive a certain amount of goods for notes that were due to L. Langfeld"; and that he and another clerk, Gorman, "picked out a lot of goods, which we gave him as security for that note,—to the defendant, Mr. Jonas Langfeld, as security for the note of L. Langfeld." But, when cross-examined about the delivery to the defendant, the witness was forced to confess his ignorance. He said: "I do not know what became of those goods. I don't know if they were taken out of the place. I don't know anything about that. As far as I know, they did not remain there. I do not know what became of them. I could not say who took them away. I don't know anything about that. I didn't see them taken away." Immediately after this, in answer to his own counsel, he retracts the whole of this confession: "I saw them packed up,—put in boxes. I know wheth-

er any of them went to Mr. Langfeld's place of business,—this defendant. His place of business was right in the same store, opposite ours, and they were removed on the other side. I saw the goods packed on our side, and removed on Mr. Langfeld's side." And there is a further contradiction in the very course of this redirect examination: "I did not hear him [the defendant] say anything about it. I did not hear him say anything about it afterwards,—about having received them or having had them. I had a talk with Mr. Langfeld afterwards. He said the goods were still there in his place. He said he had them." Such statements are certainly entitled to but little credence. The witness shows a disposition throughout to vary his testimony to suit the exigencies of the case, as soon as he learns what those exigencies are.

The evidence on the other side is strong and convincing. There is the defendant's denial that he ever received the goods; the admission of Louis Langfeld that he did receive them, and that they were delivered to him by Blum's expressman in the ordinary manner, without any intervention on the part of the defendant; and the testimony of a salesman of the defendant that none of Blum's goods were removed to the defendant's office at the time in question. Strong corroboration of this testimony is furnished by Exhibit C. This is a bill for the goods, headed, "Mr. L. Langfeld, Bought of Gustave Blum," and rendered to Louis Langfeld the day after the goods were separated from Blum's stock. It is highly improbable that this bill would have been sent to Louis Langfeld if the transaction had been with the defendant, and while the goods were still in the latter's hands. In the face of the clear and convincing evidence for the defendant, corroborated, as it is, by this bill, the reckless statements of Hahn cannot avail to support a verdict charging the defendant with a large sum of money, and fixing upon him the stigma of a serious charge.

The testimony of Mrs. Blum has not been overlooked. She says: "I went to Mr. Langfeld with my attorney, Mr. Campbell, and requested Mr. Langfeld to kindly give me the goods which he had, and he says as soon as his note would be satisfied he would return the goods." As Mr. Louis Langfeld was the only one who held a note against Blum, this testimony plainly refers to him, in spite of the fact that the witness had previously referred to the defendant as "Mr. Langfeld." In addition, the witness places the date of this demand as September, 1891, while the only demand pleaded is stated to have been made in June, 1892. The witness admits, also, that her recollection of these events is poor; and her attorney, who went with her, as she says, was not called to corroborate her, or his absence in any way explained. In view of the ambiguous nature of this testimony, it can have no probative force as evidence of an admission by the defendant that he had the goods, or that he held them in his own right.

If we should assume, however, that the defendant did receive the goods, the evidence to charge him is still insufficient. It is admitted that he was acting in his brother's interest, and that the goods were delivered to him "as security for the note of L. Langfeld." The only

additional testimony against him is that at some later period, not defined with exactness, the goods were still in his possession. But, even if they were, he held them, not in his own right, but as representing his brother, and as security for the latter's note. That the goods did eventually reach Louis Langfeld, and were by him sold, is established by uncontradicted evidence. There was also uncontradicted evidence that Blum authorized their delivery to Louis Langfeld for this purpose. We have, then, on the plaintiff's own evidence, merely the case of an agent who receives goods for a principal, who is entitled to them, and who then delivers such goods to this principal. Clearly, under such circumstances, there is no conversion by the agent.

It is said that the defendant did not in his answer allege that he was entitled to the possession of the goods under any circumstances, or that he took them in the right of his brother. This was not new matter which he was required to plead. He distinctly denied the conversion alleged. On the general issue as to conversion, he had a right to show any fact which, if true, negatived such conversion. He did not admit that, after the goods had been picked out and delivered to him, whether as the representative of Blum or in his own right, Blum was still entitled to their possession. What he admitted was that originally Blum owned the goods, and was entitled to their possession. It was therefore competent, upon the issue of conversion, to show how, and under what circumstances, and in what right, he received the goods; and if, on all the facts, it appeared that, though they were delivered to him under authority from Blum, such delivery was in the right of his brother, and as security for his brother's note, his refusal to return them until that note was paid, or his delivery of them to his brother, was not a conversion. The defendant did undoubtedly testify that he never received the goods at all. If he did not so receive them, then there was, of course, no conversion. He was, however, not concluded by this testimony. The issue of conversion was still open. He had a right to go further under that issue, and, upon the possibility that the jury might find against him as to the receipt of the goods, show that still there was no conversion. In other words, he could deny in his testimony the receipt of the goods, and yet contend that, upon the testimony generally as to how and under what circumstances he so received them, there was no conversion.

The judgment should also be reversed for an error in the charge. The learned trial judge charged that there was not sufficient evidence in this case to show that Mr. Gorman, an employé of Blum's, "if he entered into such a transaction [that is, the delivery of the goods to the defendant for Louis Langfeld], had any authority from Mr. Blum to do so." Louis Langfeld had testified that he gave Blum the note upon the understanding that he was to receive goods in return, sell them, and apply the proceeds thereon, and that Blum, in his presence, directed that the goods be picked out and sent to him. The excuse made for the charge is that this authority was only to deliver the goods to Louis Langfeld, not to the defendant. If the defendant had misapplied the goods, there might be some force in

the contention. But inasmuch as, if the defendant ever received the goods at all, he fulfilled his duty by delivering them to his brother, the charge was misleading and erroneous. The jury were given plainly to understand that Louis Langfeld himself had no right to the goods, and hence that the defendant was liable whatever he did with them. They were thus practically told to disregard Louis Langfeld's testimony entirely.

There should be a reversal, and a new trial.